UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ASIA R.,

                Plaintiff,

     v.

ACTING COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

CASE NO. 2:20-cv-1157-DWC

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of

defendant's denial of plaintiff's application for supplemental security income ("SSI"). Pursuant

to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties

have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

Despite traumatic events in her childhood, including witnessing her mother's ex-

boyfriend kill her mother's boyfriend and the subsequent abandonment from her mother, plaintiff

can be credited for demonstrating the resilience and ability to take care of her daughter, as well

as do some babysitting for another child, and maintain some of her clinic visits for treatment.

1  Although plaintiff suffers from some severe impairments, including headaches, fibromyalgia,

2  anxiety and depressive disorder, the ALJ's finding that plaintiff is not disabled is supported by

3  substantial evidence in the record and therefore must be upheld.

4         Therefore, this matter is affirmed.

5                        FACTUAL AND PROCEDURAL HISTORY

6         On April 14, 2015, plaintiff filed an application for disability insurance benefits ("DIB")

7  and supplemental security income ("SSI") alleging disability as of March 31, 2018. *See* Dkt. 10,

8  Administrative Record ("AR"), p. 21. The application was denied upon initial administrative

9  review and on reconsideration. *See id*. A hearing was held before Administrative Law Judge

10 ("ALJ") Tom L Morris on June 8, 2017. *See* AR 39-47. In a decision dated February 22, 2018,

11 ALJ Morris determined plaintiff to be not disabled. *See* AR 13-35. Plaintiff's request for review

12 of ALJ Morris's decision was denied by the Appeals Council, and the subsequent appeal to the

13 District Court for the Western District of Washington was decided in plaintiff's favor. *Id*.

14 Plaintiff appeared and testified at an additional hearing before ALJ Laura Valenti ("the ALJ") on

15 March 5, 2020. *See id*.

16        On March 31, 2020, the ALJ issued a written decision determining plaintiff was not

17 disabled, making the ALJ's decision the final decision of the Commissioner of Social Security

18 ("Commissioner"). *See* AR 555-76; 20 C.F.R. § 404.981, § 416.1481. The ALJ found that

19 plaintiffs DIB claim fails at Step 2 for a lack of objective medical evidence and plaintiff does not

20 appear to have appealed this particular finding. *See* AR 570.

21        In plaintiff's Opening Brief, plaintiff maintains the ALJ erred by failing to decide

22 plaintiff's SSI claim favorably, specifically: "the ALJ erred in failing to properly evaluate the

23 opinions of the examining providers and provide adequate explanation for not according those

24

1  opinions greater weight, and in failing to properly explain her preference for the opinion of the

2  defendant agency medical consultants." Plaintiff's Open Brief, ("Open") Dkt. 12, p. 2. Defendant

3  contends that (1) the ALJ reasonably considered the opinions of examining psychologist Jenna

4  Yun, Ph.D. which was contradicted by the opinion of a different examining psychologist and the

5  state agency psychological consultants; (2) the ALJ reasonably considered the opinion of

6  examining psychologist Holly Petaja, Ph.D., which was also contradicted by the opinions of an

7  examining psychologist and the state agency psychological consultants; and (3) the ALJ

8  reasonably considered the opinions of the state agency psychological consultants. Defendant's

9  Response Brief ("Response"), Dkt. 13, pp. 1-2.

10  STANDARD OF REVIEW

11        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

12  social security benefits if the ALJ's findings are based on legal error or not supported by

13  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

14  Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

15  more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

16  mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

17  750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

18  DISCUSSION

19  **I.      Whether the ALJ erred by failing to consider properly the opinions of the
          examining doctors in the record or erred by failing to explain adequately
20        why the opinions were rejected.**

21        Plaintiff questions the ALJ's evaluation of the medical evidence, specifically the

22  evidence from (1) examining psychologists Dr. Jenna Yun, Ph.D.; (2) Dr. Holly Petaja, Ph.D.;

23  versus (3) the non-examining state agency psychological consultants and state agency consulting

24

1  examining psychologist, Dr. Diane Cook, Ph.D. Open, Dkt. 12, p. 2. Defendant contends that the
2  ALJ reasonably evaluated the medical evidence. Response, Dkt. 13.

3      The parties agree that in this matter, although the ALJ must provide "clear and
4  convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining
5  physician or psychologist, when a treating or examining physician's opinion is contradicted, that
6  opinion can be rejected "for specific and legitimate reasons that are supported by substantial
7  evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citations omitted).

8      The ALJ can accomplish this by "setting out a detailed and thorough summary of the
9  facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings."
10 *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d
11 747, 751 (9th Cir. 1989)). That is what the ALJ did here. *See id*.

12     When reviewing the medical evidence, the ALJ found that plaintiff has the severe
13 impairments of headaches, fibromyalgia, obesity, anxiety and depressive disorder. AR 558
14 (*citing* 20 CFR 404.15 20 (c) and 416. 920 (c)). After concluding that plaintiff's impairments do
15 not meet a Listing, the ALJ found that plaintiff had the residual functional capacity ("RFC") to
16 perform light work with the following additional limitations:

17     [S]tanding and walking  .  .  . [and] postural activity [] limitations omitted].  .  .
       The claimant can work superficially and occasionally with the general public and
18     can interact occasionally with supervisors. She can work in the same room with
       coworkers, but there should be no coordination of work activity.
19
20 AR 561. Plaintiff challenges only limitations related to mental impairments.  Open, Dkt. 12.

21     Regarding plaintiff's allegations, the ALJ reviewed plaintiff's physical allegations of
22 limitation, and also noted that regarding "mental symptoms, [plaintiff] said it was hard to leave
23 the house and be around people, which caused her to reschedule appointments and struggle with
24

1  public contact." AR 562. The ALJ also noted plaintiff's allegations of the tendency "to

2  catastrophize in her thinking and [having the need] to leave public spaces all the time." *Id*.

3      The ALJ included the following discussion of plaintiff's allegations:

4        At a recent hearing, [plaintiff] alleged she is not working because it is hard to get
out of bed due to fibromyalgia and anxiety. She testified that her primary

5  problems are pain, depression, and anxiety. She takes ibuprofen for pain, but is
not taking mental health medication because she alleged bad side effects of dry

6  mouth and worsened headaches. She stated that she started getting headaches 4 to
5 years ago and that she gets headaches 2 to 3 times a week that can last a couple

7  of hours to sometimes days. She said that her pain from fibromyalgia can cause
her to lose concentration because she is focused on pain. As for panic, the

8  claimant described symptoms of heart pounding, getting "really jittery," and
getting really nervous, which she said she was currently experiencing, and that

9  lasts at least 10 to 15 minutes, but can last as much as an hour. She said her last
job in 2010 ended when she did not return one day and the job before that lasted a

10  week, but she could not recall why it ended. She indicated that she is the primary
care provider for her 7-year-old daughter and that she drives, but rarely. She

11  asserted that on good days she will try to do housework and spent time with her
daughter, but on a bad day, depending on how bad it is, she will get help from a

12  friend or family member. She said on bad days, she cannot get out of her house,
but that her brother lives about a mile away and will help as needed. She indicated

13  bad days occur about half of the month.

14  AR 562.

15      Next, the ALJ explained why some of plaintiff's allegations regarding physical

16  limitations were not adopted into plaintiff's RFC, and as noted, plaintiff is not challenging this

17  aspect of the decision. *See id*. at 562-63. For example, despite complaining consistently of severe

18  pain in various areas of the body, plaintiff "exhibited, upon examination and after the alleged

19  onset date, normal strength, or normal muscle tone, in all assessed muscle groups." AR 563

20  (internal citations omitted). The ALJ noted that despite presenting with back complaints and

21  being advised to try physical therapy, plaintiff "did not follow through, with no explanation for

22  noncompliance with medical advice." *Id*. Bearing some relevance to mental impairments, the

23  ALJ noted that when seeking treatment for chronic migraine headache complaints, despite

24

1   presenting with some tenderness and pain, plaintiff's "examination was relatively normal, she

2   was alert and oriented, and displayed normal behavior, mood and affect, and judgment and

3   thought content." *Id*. (*citing* Exhibit 15F-14 *i.e*., AR 1014)). The ALJ continued her evaluation of

4   the medical evidence and record:

5           Regarding mental impairments, the regular notations in [plaintiff]'s treatment
            records of minimal psychiatric observations are inconsistent with her allegations
6           of extremely limiting mental health symptoms. During the relevant period,
            treatment notes document the [plaintiff] as alert and oriented. She often had
7           normal mood and affect as well as normal and cooperative behavior. Despite
            some complaints of depressive symptoms, providers observed she also had
8           normal judgment and thought content. Even with complaints of body pain and
            tenderness in multiple areas of her body, [plaintiff's] MSE was normal.
9

10  AR 563 (internal citations omitted).

11          After finding that plaintiff's "relatively benign presentation does not corroborate her

12  description of marked/severe social, cognitive, and mental dysfunction," the ALJ continued with

13  further discussion of plaintiff's complaints of anxiety, PTSD, and depression, noting "some

14  improvement with counseling." AR 564. The ALJ continued in the written decision, with the

15  detailed and thorough summary of evidence from the record. *See* AR 564-66.

16          For example, regarding plaintiff's "complaints of anxiety, PTSD, and depression, [the

17  ALJ noted] some improvement with counseling [after sporadic treatment between 2015 and

18  2018] and was often able to maintain therapeutic gains." AR 564 (internal citations omitted).

19  Similarly, in the ALJ's written decision, the ALJ noted that plaintiff "even joined a social

20  anxiety group and her only noted difficulty in attending was due to child care issues, [and the

21  ALJ noted plaintiff's] reported improvement in anxiety when doing yoga." *Id*. (*citing* AR 817,

22  842 (14 F/1, 26)).

23

24

1    The ALJ also noted plaintiff's "performance and mental status examinations ["MSEs"]

2    were not consistent with her allegations." AR 564. The ALJ gave examples: "in [plaintiff's] June

3    2015 consultative examination, [plaintiff] had vague complaints of depression and anxiety, but

4    admitted to no current mental health treatment, but still was able to go to methadone clinic twice

5    a week, and maintained a fairly normal mental status, [completing] digits spans up to 6 digits

6    forward and 4 digits backward." *Id* (*citing* AR 350 (5F/2); *see also* AR 368 (7F/5)). The ALJ

7    also noted other positive aspects of plaintiff's MSE, for example noting plaintiff's immediate

8    memory of 3/3 items and up to 2/3 items after a 5 minutes delay, as well as plaintiff's ability "to

9    complete serial 7s, up to 30, serial 3 subtractions without error and spell 'world' correctly both

10   forward and backward." AR 564 (*citing* AR 350 (5F/2); *see also* AR 368 (7F/5)).

11       The Court has reviewed the record, including the citations from the ALJ and the written

12   decision. The Court concludes that the ALJ's findings as discussed are based on substantial

13   evidence in the record (*see, e.g.,* AR 350, 817, 842 (5F/2; 14 F/1, 26)).

14       The ALJ also relied on plaintiff's "ability to act as the primary caregiver for her child,"

15   finding it "inconsistent with her reported limitations." AR 564. The ALJ found that despite

16   plaintiff's suggestion that she gets help on bad days about half of the month, plaintiff "told a

17   psychological examiner in 2015 that she wakes when her baby does, feeds her, plays with her,

18   takes her to the playground, and attends a moms' group [that] focuses on positive parenting." AR

19   564-65 (*citing* AR 351 (5F/3)). Despite the reflection in the record noted by the ALJ, that

20   plaintiff reported depression on some days, the ALJ noted that plaintiff demonstrated the ability

21   "to care for her child's basic needs, has brought her young child and a child she was babysitting

22   to medical appointments, and despite pain, [plaintiff] was seen chasing her throughout the hall."

23   AR 565 (*citing* AR 454, 469, 1001 (11 F/20, 35; 15 F/1)). Plaintiff is correct that in isolation the

24

1  fact that a claimant engages in childcare is not a legitimate basis to deny their claims of disabling

2  limitations. However, based on a review of this particular record, with the citations noted, the

3  Court concludes that the ALJ's findings that plaintiffs "statements and actions suggest she relies

4  on others' support less often and is more capable than alleged [and that the] ability of [plaintiff]

5  to act as the care taker for her child is incompatible with her allegations," are findings based on

6  substantial evidence in the record as a whole. *See, e.g.,* AR 454, 1001.

7       Similarly, the ALJ noted differing reports of plaintiff's anxiety and panic, as well as her

8  various activities and hobbies. *See* AR 565-66 (internal citations omitted)). For example, the ALJ

9  noted that by April 2018 although plaintiff reported still having frequent anxiety/panic episodes,

10  she also reported the ability "to take it easier, 'just feel less scared and may be a little more

11  prepared,' and is able to do more activities with her kid." AR 566 (*citing* AR (14 F/15, 17)). In

12  defendant's Response Brief, defendant directs the Court to additional evidence in the record

13  providing further substantial evidence in support of the ALJ's finding, noting that on October 18,

14  2019, plaintiff "Denies any depressed mood, anxiety or sleep issues." Response, Dkt. 13, p. 8

15  (*citing* AR 1016 (15 F/16)). Based on a review of the record, the Court concludes that the ALJ's

16  finding that plaintiff's treatment record contradicts plaintiff's allegations of disabling anxiety is a

17  finding based on substantial evidence in the record as a whole. *See, e.g.,* AR 324 (April 16, 2015:

18  "she has a normal mood and affect. Her behavior is normal. Judgment and thought content

19  normal"); AR 325 (January 21, 2015: "she has a normal mood and affect. Her behavior is

20  normal."); AR 1016 (October 18, 2019: "Denies any depressed mood, anxiety or sleep issues").

21       It is at this point in the written decision where the ALJ discusses the medical opinion

22  evidence from the state agency consultants and gives the opinions "significant weight." *See* AR

23  566.

24

1    **A. State Agency consultants**

2    Plaintiff contends that the ALJ "did not provide adequate or specific and legitimate

3    explanations for why she preferred the medical consultants' opinions over that of the examiners."

4    *See* Open, Dkt. 12, p. 14. Defendant responds an ALJ "only needs to provide reasons for

5    rejecting medical opinions, not for adopting them." Response, Dkt. 13, p. 9 (*citing Orteza v.*

6    *Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)). Defendant's argument is persuasive and the Court

7    notes that plaintiff cites no law in support of the argument that the ALJ did not provide adequate

8    explanation for preferring medical consultants' opinions. *See* Open, Dkt. 12, p. 14.

9    The ALJ noted that on July 13, 2015, Dr. Leslie Postovoit PhD opined that plaintiff "was

10    capable of work in a primarily independent work setting with superficial social demands and

11    interaction with supervisors, coworkers, and the general public," an opinion that was concurred

12    with by Dr. Carla Van Dam PhD on December 10, 2015. AR 566 (*citing* AR 88-109 (1A/2A)).

13    The ALJ found that these medical opinions from the state agency consultants are "consistent

14    with each other based on their independent reviews of the record [and] are also consistent with

15    the minimal observations of psychiatric difficulty, [MSEs], [plaintiff's] ability to attend

16    treatment, improvement with therapy, [plaintiff's] statements to providers, and her ability to act

17    as the primary caregiver for her young daughter." AR 566. The ALJ's discussion regarding the

18    opinions of the state agency medical consultants is based on substantial evidence in the record, as

19    it is supported by such "'relevant evidence as a reasonable mind might accept as adequate to

20    support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis*

21    *v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

22    Before moving on to the opinions from the examining psychologists at issue in this

23    matter, in her written decision, the ALJ next discussed the opinion from consultative

24

1   psychological examiner, Dr. Diana Cook, PhD. *See* AR 567 (*citing* AR 349-52 (5F)). The ALJ

2   assigned "significant weight" to this opinion, noting Dr. Cook's opinion that plaintiff "is able to

3   take instruction, complete simple and repetitive as well as more complex tasks during the

4   intellectual portion of the examination," and noting that Dr. Cook observed that plaintiff "seems

5   able to get along with others, although she stated she does not go out and noted she does not

6   seem to have a support system." *Id*. The ALJ noted the lack of opined limitations from Dr. Cook

7   which would have prevented plaintiff from performing work, and in addition, noted that "the

8   activities of daily living [plaintiff] reported to this provider are substantial, more so than when

9   (sic) she disclosed at [the] hearing." *Id*. The ALJ provided an example, noting that plaintiff, to

10  Dr. Cook, made "no mention of anyone helping her with caring for her young daughter, grocery

11  shopping, etc., which is consistent with the treatment notes showing [plaintiff] was sometimes

12  accompanied by her child." AR 567.

13       The Court, upon review of the relevant evidence, concludes that the ALJ's findings

14  regarding Dr. Cook's opinions are supported by substantial evidence in the record. Dr. Cook

15  examined plaintiff on June 30, 2015. *See* AR 349-352. Regarding general appearance, Dr. Cook

16  observed that plaintiff's hair appeared clean and that plaintiff "looks to engage in consistent

17  moderate grooming and hygiene." *See* AR 350. Dr. Cook took note of plaintiff's report of her

18  abusive childhood history and noted that plaintiff's "thought content is positive for some angst

19  and shyness." *See id.* Dr. Cook observed that plaintiff presented with "a broad range of affect,"

20  although plaintiff's mood was "stated as 'pretty anxious and nervous.'" *Id*. Plaintiff

21  demonstrated full orientation and completed digit span to six digits forward and four digits

22  backward. *Id.* Dr. Cook valued plaintiff as capable of completing serial 7s and noted that plaintiff

23

24

1  correctly spelled "world" forward and backward, representing some concentration ability. *See*

2  AR 351. Dr. Cook opined that plaintiff "is able to stay focused." *See* AR 351.

3        Dr. Cook assessed plaintiff with a diagnosis of depression; anxiety and a rule out

4  diagnosis for PTSD symptomotology, among other assessments. *Id*. Dr. Cook opined that

5  plaintiff's work history "was relatively stable," and that plaintiff seemed "to be on a positive

6  trajectory, and in the beginning stages of improving her lot." *Id*. In her functional assessment, Dr.

7  Cook opines that plaintiff "is able to take instruction, complete simple and repetitive, as well as

8  more complex tasks during the intellectual portion of the exam." AR 352. Dr. Cook also assessed

9  that plaintiff "seems able to get along with others, although she states she does not go out." *Id*.

10        As already noted, *see supra*, based on a review of the record, the Court concludes that the

11  ALJ's findings that the opinions of Dr. Cook, examining psychologist, are consistent with

12  minimal observations throughout the record of psychiatric difficulty is a finding based on

13  substantial evidence. It is supported by the observations of examining psychologist, Dr. Cook

14  herself, as well as the other reflections from the treatment record in the written decision by the

15  ALJ noted above, *see supra*.

16  **B.  Dr. Jenna Yun, Ph.D., examining psychologist**

17        After reviewing some of plaintiff's treatment record, the evidence from the state agency

18  non-examining consultants and the evidence from state agency examining medical consultant Dr.

19  Cook, the ALJ next evaluated the opinions from Dr. Jenna Yun, PhD, who evaluated plaintiff in

20  October 2015, November 2016, November 2017 and November 2019. *See* AR 567. The ALJ

21  found that the opinions from Dr. Yun "noting likely incapacitated for 9 to at most 12 months are

22  equivocal temporal examinations." *See id*. Defendant contends that this particular reason "was

23

24

1   not sufficient, though the error was harmless because the ALJ gave at least one good reason."

2   Response, Dkt. 13, p. 7, n 1.

3       The Ninth Circuit has "long recognized that harmless error principles apply in the Social

4   Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. v.*

5   *Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An error is harmless if it is

6   "'inconsequential to the ultimate non[-]disability determination.'" *Molina*, 674 F.3d at 1117

7   (*quoting Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

8       The Court agrees with defendant that based on this particular record, the ALJ's finding

9   regarding "equivocal temporal examinations," is not sufficiently legitimate rationale for failing

10  to credit fully the opinions from Dr. Yun; however, the Court also agrees that the error is

11  harmless. *See id.* As discussed below, *see infra*, the Court concludes that the ALJ provided other,

12  legitimate rationale supported by substantial evidence for failing to credit fully the opinions from

13  Dr. Yun. The Court also concludes that the record does not demonstrate that reliance on this

14  equivocal temporal factor affected the ultimate determination, given the other evidence of record.

15      In her written decision, the ALJ acknowledged that Dr. Yun examined plaintiff on four

16  separate occasions over the course of four years, despite plaintiff's argument that the ALJ did not

17  acknowledge that this examining source evaluated plaintiff on multiple occasions. *See AR 567.*

18  Plaintiff contends that the ALJ "provided limited and inadequate explanation" when failing to

19  credit fully medical opinions of Dr. Yun. Open, Dkt. 12, p. 5.

20      Dr. Yun's opinions regarding disabling and/or marked and severe limitations are

21  contradicted by the opinions of the state agency consultants and the other examining

22  psychologist's opinion discussed above, *see supra*, Section A. Plaintiff acknowledges that an

23  ALJ can provide specific and legitimate reasons supported by substantial evidence in the record

24

1   to reject contradicted opinions from examining doctors "by setting out a detailed and thorough

2   summary of the facts and the conflicting evidence, stating her interpretation of the facts and

3   evidence, and making findings." *Id.* at 3 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

4   Cir. 1989)). Based on a review of the record, including review of the ALJ's written decision as

5   discussed above, *see supra*, the Court concludes the ALJ set out a detailed and thorough

6   summary of the facts and conflicting evidence, stated her interpretation thereof, and made

7   findings supported by substantial evidence. *See Magallanes*, *supra*, 881 F.2d at 751.

8          The Court already has delineated above, *see supra*, the detailed and thorough summary

9   from the ALJ's written decision of much of the evidence regarding plaintiff's claim. When

10  discussing the opinion from Dr. Yun, the ALJ found that Dr. Yun's "findings that [plaintiff] was

11  mostly within normal limits is inconsistent with the exaggerated check-marked limitation she

12  opined without reasonable narrative to explain the deviation." AR 567. The ALJ also found Dr.

13  Yun's "opinions are inconsistent with the contemporaneous treatment records showing minimal

14  observations of psychiatric difficulty, some improvement with therapy, situational stressors

15  influencing [plaintiff's] presentation, and other mental status examinations showing greater

16  capacity." *Id.* For these reasons, the ALJ gave the opinions "no weight." *Id.*

17         Although plaintiff complains that the ALJ's reasons are insufficiently explained, it is the

18  entirety of the ALJ's discussion in context, as already discussed above, *see supra*, that provides

19  the specificity and substantial evidence supporting the rationale. For example, regarding

20  inconsistency with "contemporaneous treatment records showing minimal observations of

21  psychiatric difficulty," the Court already has discussed how the ALJ's written decision includes a

22  discussion of plaintiff's demonstrated full orientation and the completion of digit span tests to six

23  digits forward and four digits backward upon mental status examination by Dr. Cook, who also

24

evaluated plaintiff as capable of completing serial 7s and noted that plaintiff correctly spelled

"world" forward and backward, representing some concentration ability. *See* AR 350-51. As

noted by the ALJ previously in the ALJ's written decision, and as noted previously by the Court,

*see supra*, Dr. Cook opined that plaintiff "is able to stay focused." *See* AR 351. These findings

upon examination with Dr. Cook are inconsistent with the impaired concentration opined by Dr.

Yun, as noted by the ALJ, and provides specific and legitimate rationale based on substantial

evidence for the ALJ's finding that "other mental status examinations show[ed] greater

capability," and for the ALJ's giving "no weight" to the opinions from Dr. Yun. *See id*. Dr. Yun

opined that plaintiff's concentration was not within normal limits, contradicting Dr. Cook, yet

the detail Dr. Yun provided purportedly explaining this opinion includes only that plaintiff "was

able to complete serial threes up to 30 without error she was able to spell WORLD forward and

backward [and] demonstrated a digit span of 4 forward and 3 backward." AR 808. This example

provides ample and certainly substantial evidence for the ALJ's finding of an inconsistency

between the different MSEs as well as for the ALJ's finding that the limitations opined by Dr.

Yun are inadequately supported by Dr. Yun's examination or her explanation. *See id.*

The Court concludes that the ALJ provided substantial evidence in support of the specific

and legitimate rationale for failing to credit fully the opinions from Dr. Yun. *See id.*

Similarly, also inconsistent with the marked and severe mental limitations opined by Dr.

Yun, including in November 2019, *see* AR 806, as noted above, *see supra*, in October 2019

plaintiff denied "any depressed mood, anxiety or sleep issues." AR 1016. Although plaintiff is

correct that this portion of the record could be interpreted differently, such as waxing and waning

of symptoms, if the record is subject to multiple rational interpretations, including one that

1    supports the findings by the ALJ, the ALJ's decision "must be upheld." *Thomas v. Barnhart*, 278

2    F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601).

3          For the reasons stated and based on the record as a whole, the Court concludes that the

4    ALJ provided specific and legitimate rationale in the entirety of the written decision for the

5    failure to credit fully the opinions from examining doctor Dr. Yun. The Court also concludes that

6    any reliance on erroneous factors is harmless error: sufficient basis for the ALJ's decision is

7    found regardless of the errors. Although the ALJ's decision may not be perfect, it is supported by

8    substantial evidence.

9          **C.  Dr. Holly Petaja, PhD, examining psychologist**

10          After evaluating the opinion from Dr. Yun, the ALJ evaluated the opinion from

11    examining psychologist, Dr. Petaja. *See* AR 567. The ALJ included the following in her written

12    decision:

13              In November 2018, DSHS examiner, Holly Petaja opined marked overall
               impairment with some severe findings and impaired memory concentration on
14              exam (internal citation to AR 793-801 (13 F/15-23)). Her opinion is given no
               weight. She reviewed no records and [plaintiff's] performance in her mental status
15              examination is inconsistent with contemporaneous treatment records showing
               relatively normal mental status, with some improvement in therapy, with social
16              stressors influencing the claimant's presentation, with [plaintiff's] statements to
               providers, and with [plaintiff's] ability to act as the primary caregiver to her
17              young daughter.

18    AR 567.

19          As with Dr. Yun's opinion, it is in the context of the full detailed discussion already

20    having taken place in the ALJ's written decision, as discussed above, *see supra,* that the actual

21    findings stated regarding Dr. Petaja's opinions are supported by substantial evidence. Therefore,

22    the Court includes that the ALJ, in the context of this ALJ's written decision, provided specific

23

24

1    and legitimate reasons supported by substantial evidence for the failure to credit fully the

2    opinions of Dr. Petaja. *See Magallanes*, *supra*, 881 F.2d at 751.

3          The Court already has discussed in the context of the opinion of Dr. Yun how the ALJ

4    has provided a detailed and thorough discussion of the conflicting medical evidence in her

5    written decision, *see supra*. Similar to the discussion above, *see supra,* Section B, in the context

6    of the opinion of Dr. Petaja, the Court notes that Dr. Petaja similarly opined that plaintiff's

7    concentration was not within normal limits, yet similarly provided no detailed explanation, while

8    listing mostly normal MSE results, with apparently only abnormal serial 7s results. *See* AR 797.

9    The ALJ's finding that plaintiff's performance in her MSE with Dr. Petaja "is inconsistent with

10   contemporaneous treatment records showing relatively normal mental status  .  .  .  ." is therefore

11   based on substantial evidence in the record. *See, e.g.*, AR 351 ("[plaintiff] completes serial 7s"),

12   AR 1016 (plaintiff denied "any depressed mood, anxiety or sleep issues"). As the Court has

13   noted previously, *see supra*, plaintiff successfully completed serial 7s upon examination with Dr.

14   Cook, who opined plaintiff "is able to stay focused." *See* AR 351.

15         In addition, Dr. Petaja opined the highest level of limitations in some areas, and opined

16   for example, that plaintiff suffered from marked limitations in her ability to perform routine tasks

17   without special supervision, and suffered from overall severity limitation rating of "severe," the

18   highest rating level. *See* AR 799. Based on the record as a whole, the Court concludes that the

19   ALJ's finding that the opinions from Dr. Petaja that plaintiff suffered from overall the highest

20   level severity of limitations is inconsistent with her ability to care for her daughter and babysit

21   for another child is a finding based on substantial evidence in the record as a whole. This finding

22   also supports the ALJ's failure to credit fully the opinions from Dr. Petaja. Again, the Court

23   finds no harmful legal error. Although not every reason relied on by the ALJ may have been

24

1   proper, there is at most harmless legal error. The ALJ's failure to credit fully some of the

2   opinions from some of plaintiff's examining doctors, including the opinions from Dr. Petaja, is

3   supported by specific and legitimate reasons based on substantial evidence in the record

4   delineated by the ALJ in her written decision.

5   **II.      Whether the Court should remand with the direction to award benefits or for**
        **further proceedings.**

6

7          The Court concludes that the ALJ has not committed any harmful legal error. Therefore,

8   the ALJ's decision should be affirmed and this matter should be dismissed. 42 U.S.C. § 405(g).

9                                        <u>CONCLUSION</u>

10          Based on the foregoing reasons, the Court hereby concludes the ALJ properly concluded

11  plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

12          Dated this 22nd day of July, 2021.

13

14                                        David W. Christel
                                          United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 17